**GEO. W. ASHLOCK COMPANY, a corporation, Plaintiff,**

v.

**ATLAS–PACIFIC ENGINEERING COMPANY, Inc., a corporation, Defendant.**

**Civ. A. No. 40581.**

United States District Court
N. D. California, S. D.
Oct. 16, 1963.

Naylor & Neal, James M. Naylor, Frank A. Neal, Karl A. Limbach, San Francisco, Cal., for plaintiff.

Edward B. Gregg, Melvin R. Stidham, San Francisco, Cal., for defendant.

ZIRPOLI, District Judge.

This cause was one for infringement of Claims 5 and 11 of Patent 2,406,736 which was granted on September 3, 1946, to George W. Ashlock, Jr., plaintiff's predecessor in interest, for "Pitting Machine." The type of pitting machine constituting the subject matter of the patent (hereinafter designated as '736) is one for the automatic high speed pitting of olives.

By way of defense to this action for infringement of these two claims of '736, the defendant: denied infringement; asserted that the claims were invalid for failure to meet the requisite standard of invention defined by Section 103 of the patent statutes (Title 35 United States Code); asserted that the claims were invalid because they were based on a disclosure first made (i. e., new matter, defendant alleged) to the Patent Office in the application for '736 more than one year after the first pitting machine covered by the claims had been put into commercial use; asserted that '736 was unenforceable because of misuse of the patent; and counterclaimed for treble damages and injunctive relief for alleged violations by the plaintiff of the anti-trust laws. The plaintiff denied that it had misused '736 and by way of its reply to the defendant's counterclaim denied that it had violated the anti-trust laws.

Well before the cause came on for trial the Court denied, without prejudice, defendant's motion for summary judgment which was predicated in part upon a stipulated statement of facts. The Court's reasons for denying said motion are reported at 136 USPQ 339 where there will also be found a recitation of the aforesaid stipulated statement of facts.

During the course of the trial the plaintiff withdrew Claim 5 of '736 from issue.

Based upon the issues stated above and after a trial of the case consuming twelve and one-half days during which the witnesses testified, models and physical exhibits were demonstrated and explained and the Court was thoroughly familiarized with the equipment of the prior art, of the '736 patent, and the commercial machines of plaintiff and defendant, the Court ruled in favor of plaintiff on all of said issues and makes the following Findings of Fact and Conclusions of Law, to wit:

## FINDINGS OF FACT

1. Geo. W. Ashlock Company, the plaintiff, is a corporation formed under and in accordance with the laws of the State of Delaware. Plaintiff's principal place of business is in San Leandro, California.

2. Atlas-Pacific Engineering Company, Inc., the defendant, is a corporation formed under and in accordance with the laws of the State of California. Defendant's principal place of business is in Emeryville, California.

3. The patent in suit, Ashlock 2,-406,736, only Claim 11 of which was at issue for decision by this Court, was granted on September 3, 1946, to George W. Ashlock, Jr., for "Pitting Machine", upon an application for United States Letters Patent filed in the United States Patent Office on March 31, 1944. The plaintiff is the successor in interest to the business of Geo. W. Ashlock, Jr., which business comprised the leasing of fruit processing machinery to fruit packers and processors. The plaintiff is likewise the lawful owner by mesne assignment of the entire right, title and interest in and to the patent in suit, No. 2,406,736, including the right to sue for past infringement of that patent.

4. Plaintiff has been the lawful owner of the patent in suit, No. 2,406,736, at all times during the commission by the defendant of the acts herein complained of by the plaintiff as constituting infringements of said patent.

5. The patent in suit, including Claim 11 of the patent, covers an olive pitting machine. Both prior to and during the time of commission by the defendant of the acts herein complained of by the plaintiff as constituting infringements of 2,406,736, the plaintiff was engaged in the business of leasing to olive packers olive pitting machines covered by Claim 11 of 2,406,736. The olive pitting machines so leased by the plaintiff bore patent number marking plates which contained on their faces the number of the patent in suit.

208

6. Plaintiff's cause of action arises under the patent laws of the United States. 35 U.S.C. §§ 271, 281 et seq. This Court has jurisdiction over the subject matter of the cause of action and over the parties by virtue of 28 U.S.C. § 1338(a), and Section 1400. By way of a first counterclaim defendant sought a declaratory judgment, by virtue of 28 U.S.C. §§ 2201 and 2202, that the patent in suit was: invalid; not infringed; and unenforceable.

7. The controversy raised by the defendant's second counterclaim and the plaintiff's reply to it arises under the anti-trust laws of the United States. 15 U.S.C. §§ 1, 2 and 14. The defendant seeks relief under 15 U.S.C. §§ 15 and 26. This Court has jurisdiction and venue with respect to the parties and to the subject matter involved in the controversy raised by the second counterclaim and the reply thereto under 28 U.S.C. §§ 1331 and 1337.

8. Claim 11, the sole claim in issue of the patent in suit, reads as follows:

"11. In combination, a conveyor movable continuously over a path and having a plurality of receptacles each adapted to support a fruit having a substantially central pit, a pitting head mounted for a reciprocating movement along said conveyor at a forward rate of advance substantially that of said conveyor, said head including a first portion overlying a portion of the path of said conveyor and a second portion underlying said path portion, a plunger reciprocatively supported by said first portion, a coring knife reciprocatively supported by said second portion, and means for first moving said plunger and said knife substantially simultaneously toward each other during advance of said head and for then moving said plunger and knife in the same direction transverse to said conveyor and at substantially the same rate."

9. The prior art relied upon by the defendant in support of its contention that Claim 11 is invalid for failure to define patentable invention under 35 U.S.C. § 103, consists of the following patents:

| Newcomb | 1,133,054 |
| Whitman | 1,458,163 |
| Kok | 2,243,530 |
| Drake et al | 2,341,857 |
| Frova | 2,360,411 |

Of these five prior patents, the only one which was expressly cited by the Patent Office Examiner against the application for '736 was the Frova patent.

10. The olive pitting machine shown and described in the drawings and written description of '736 is termed by the plaintiff as its Type B machine. Type B machines went into commercial use in May, 1944, under leases for terms of not less than three years.

11. About two years after the introduction to the olive packing industry of his Type B machine, George W. Ashlock, Jr. offered a refined version, known as the Type C machine, of his olive pitting machine to the industry. The Type C machines gradually replaced the Type B machines as the latter were returned to the Ashlock plant for repair and overhaul and as the leases relating to the Type B machines expired and new leases were negotiated.

12. About one to two years after the Type C machine first became available to the industry, George W. Ashlock, Jr. offered another refined version, known as the Type D machine, of his olive pitting machine to the industry. The Type D machines gradually replaced the earlier Ashlock machines as the latter were returned to the Ashlock plant for repair and overhaul and as the leases relating to the earlier machines expired and new leases were negotiated.

13. The Type B, Type C and Type D Ashlock machines as well as the defendant's machines which are charged to infringe Claim 11 of '736 are all characterized by the following relationship of parts and manner of operation, as called for by Claim 11:

"(a) a conveyor movable continuously over a path and having a

plurality of receptacles each adapted to support a fruit having a substantially central pit,

"(b) a pitting head mounted for a reciprocating movement along said conveyor at a forward rate of advance substantially that of said conveyor,

said head including a first portion overlying a portion of the path of said conveyor and a second portion underlying said path portion,

"(c) a plunger reciprocatively supported by said first portion,

"(d) a coring knife reciprocatively supported by said second portion, and

"(e) means for first moving said plunger and said knife substantially simultaneously toward each other during advance of said head and for then moving said plunger and knife in the same direction transverse to said conveyor and at subtantially the same rate."

14. Newcomb 1,133,054 discloses a method for pitting olives wherein a plunger enters an olive from one end, a coring knife enters the olive from the other end, the knife stopping short of the pit, and thereafter the plunger moves, while the knife remains stationary, to move the pit fully within the hollow knife and out of the olive. Claim 11 distinguishes over Newcomb in the following italicized particulars:

"11. In combination, *a conveyor movable continuously over a path and having a plurality of receptacles* each adapted to support a fruit having a substantially central pit, *a pitting head mounted for a reciprocating movement along said conveyor at a forward rate of advance substantially that of said conveyor, said head including a first portion overlying a portion of the path of said conveyor and a second portion underlying said path portion,* a plunger *reciprocatively supported by said first portion,* a coring knife *reciprocatively supported by said second portion, and means for first moving said plunger and said knife substantially simultaneously toward each other during advance of said head and for then moving said plunger and knife in the same direction transverse to said conveyor and at substantially the same rate."*

15. Kok 2,243,530 discloses an automatic and continuously operable pitting machine for the pitting of cherries. This pitting machine has a continuously movable receptacle-conveyor, a pitting head mounted for reciprocating movement along the conveyor, a plunger reciprocatively supported by the head above the conveyor, and means for moving the plunger toward and transverse of the conveyor during advance of the head. Claim 11 distinguishes over Kok in the following italicized particulars:

"11. In combination, a conveyor movable continuously over a path and having a plurality of receptacles each adapted to support a fruit having a substantially central pit, a pitting head mounted for a reciprocating movement along said conveyor at a forward rate of advance substantially that of said conveyor, said head including a first portion overlying a portion of the path of said conveyor *and a second portion underlying said path portion,* a plunger reciprocatively supported by said first portion, *a coring knife reciprocatively supported by said second portion,* and means for *first* moving said plunger *and said knife substantially simultaneously* toward *each other during advance of said head and for then moving said plunger and knife in the same direction transverse to* said conveyor *and at substantially the same rate."*

The foregoing claim italicizing requires some clarification. In lieu of what is called for in the last five lines of the claim, Kok has the following:

"and means for first moving said plunger toward said conveyor during

advance of said head and for then moving said plunger transverse to said conveyor."

16. Whitman 1,458,163 discloses a fruit pitter wherein the conveyor, which is of the indexing and drum type, remains stationary during the pit removal operation. Whitman's pitting head has upper and lower plunger elements which are moved together toward the fruit to be pitted. The lower plunger element moves at twice the rate of speed of the upper plunger element, and consequently once both elements have engaged the fruit pit the lower element drops away rapidly, leaving the pit to be removed from the fruit by the upper element alone rather than being carried out of the fruit while both elements engage the pit. In Whitman, the pitting head is not mounted for reciprocating movement along the conveyor. Claim 11 distinguishes over Whitman in the following italicized particulars:

"11. In combination, a conveyor movable *continuously* over a path and having a plurality of receptacles each adapted to support a fruit having a substantially central pit, a pitting head *mounted for a reciprocating movement along said conveyor at a forward rate of advance substantially that of said conveyor*, said head including a first portion overlying a portion of the path of said conveyor and a second portion underlying said path portion, a plunger reciprocatively supported by said first portion, a coring knife reciprocatively supported by said second portion, and means for first moving said plunger and said knife substantially simultaneously toward each other *during advance of said head* and for then moving said plunger and knife in the same direction transverse to said conveyor *and at substantially the same rate.*"

17. Frova 2,360,411 discloses a fruit pitter wherein fruit to be pitted descend through feed chutes to pick-up stations. Opposed plunger elements come together on the fruit pit and thereafter the elements move together in the same direction to carry the fruit against a pocket-shaped portion of a fixed scavenging plate, the plate serving to strip the fruit from the pit as the follower plunger element forces the pit through a pit-passing aperture in the plate. Frova does not disclose that the pit is engaged by both of the plunger elements as the pit is removed from the fruit. Frova lacks the receptacle-conveyor called for by Claim 11, and because of this lack Frova does not accomplish pit removal while the fruit is stationarily positioned within a moving receptacle-conveyor. Claim 11 further distinguishes over Frova in the following italicized particulars:

"11. In combination, a conveyor *movable continuously over a path and* having a plurality of receptacles each adapted to support a fruit having a substantially central pit, a pitting head *mounted for a reciprocating movement along said conveyor at a forward rate of advance substantially that of said conveyor*, said head including a first portion overlying a portion of the path of said conveyor and a second portion underlying said path portion, a plunger reciprocatively supported by said first portion, a coring knife reciprocatively supported by said second portion, and means for first moving said plunger and said knife substantially simultaneously toward each other during advance of said head and for then moving said plunger and knife in the same direction transverse to said conveyor and at substantially the same rate."

18. Drake et al 2,341,857 disclose an automatically and continuously operable fruit pitter wherein gripping fingers carry each fruit, or olive, along to a point where the olive is seized between oppositely disposed punch and die elements, the die carrying a coring tube, or knife, which is relatively movable with respect to it to effect a coring cut in the olive while the olive is disposed between and seized by the punch and die elements. Thereafter the die is moved to strip the

olive from the pit by forcing the olive over the then stationary punch. Prior to the pitting of the olive the olive gripping fingers are released from the olive, the olive conveying function being thereafter assumed by the punch and die elements, which perform the coring and pitting functions. Drake et al do not employ a receptacle-conveyor which functions to support and move the olives while they are being cored and pitted. The following italics in Claim 11 indicates the lack in Drake et al of a receptacle-conveyor and the consequent lack of the function and relationship of such a conveyor with the other elements called for by the claim:

"11. In combination, *a conveyor movable continuously over a path and having a plurality of receptacles each adapted to support a fruit having a substantially central pit*, a pitting head mounted for a *reciprocating* movement *along said conveyor at a forward rate of advance substantially that of said conveyor*, said head including a first portion *overlying a portion of the path of said conveyor* and a second portion *underlying said path portion*, a plunger reciprocatively supported by said first portion, a coring knife reciprocatively supported by said second portion, and means for first moving said plunger and said knife *substantially simultaneously* toward each other during advance of said head *and for then moving said plunger and knife in the same direction transverse to said conveyor and at substantially the same rate*."

19. Having carefully considered the five prior art patents relied upon by the defendant and the oral testimony given by the witnesses called by both parties concerning these patents, and having carefully considered the drawings and written description of the pitting machine of '736 and the oral testimony given by the witnesses called by both parties concerning the same, I find that the advance in the art of pitting machines contributed by the disclosure of '736 amounts to the following: the combining for the first time of aligned plunger and coring knife elements with a continuously movable conveyor and with means for mounting and actuating said elements so that they are caused to move with a dual reciprocating motion relative to the moving conveyor, with this dual reciprocating motion being characterized by movement of the plunger and knife elements in advance with the conveyor and at the rate of travel of the conveyor and by subsequent movement of the plunger and knife elements, first, toward each other and toward the conveyor and, then, in the same direction transversely of the conveyor and at the same rate. I further find that this advance in the art is fairly and accurately delineated by Claim 11 of '736.

20. For an invention to be patentable it must be new and useful, as required by 35 U.S.C. § 101. Having found that Claim 11 defines an advance in the art, it follows that the subject matter of Claim 11 has the requisite newness or novelty required by the statute. The invention defined by Claim 11 is useful. Usefulness is adequately demonstrated by the fact that the Type B machine, which in the words of '736 was in 1944 the "present preferred form of machine embodying this invention", was introduced to the olive packing industry in 1944 and remained in use for a number of years.

21. While Drake et al 2,341,857 was not cited by the Patent Office against the application for '736, there is sufficient evidence in the record before this Court to warrant the herein finding that Drake et al was considered by the Patent Office Examiner in connection with the application for '736. The same Patent Office Examiner who considered and cited Frova 2,360,411 against the application for '736 and who thereafter allowed Claim 11 over Frova examined and granted the application of George W. Ashlock, Jr. for Patent No. 2,407,126. The latter patent, which contains claims directed to a method of pitting rather than to pitting apparatus, discloses the

Type B machine disclosed in '736 and was granted on September 3, 1946, the date of grant of '736. The application for 2,407,126 furthermore stated that it was a continuation in part of the earlier filed application for '736.

During the course of solicitation of 2,407,126, the Examiner rejected certain claims, which were directed to a method of pitting which inhered in the use of the Type B machine disclosed in '736 for the reason that those particular claims were not patentable over either Frova 2,360,-411 or Drake et al 2,341,857.

▆▆▆ Under a similar factual pattern as to identity of Examiner, cross-referencing and similarity of disclosures between two co-pending applications of the same applicant, and citation of a prior art reference against one application but not against the other, it has been held that the prior art reference in question should be deemed as having been considered, although not cited, with respect to the other application. See, for example, Otto v. Koppers Company, Inc. et al., CA 4, 246 F.2d 789.

22. 35 U.S.C. § 282 accords to Claim 11 a presumption of validity and provides that the burden of establishing the invalidity of Claim 11 rested upon the defendant. On the basis of the total weight of the evidence, including the oral testimony of the witnesses, I am unable to find that the defendant has met this burden. To the contrary, I am constrained to find that the defendant has not met this burden and that Claim 11 is in fact valid. In so finding I have in mind the following:

(a) With respect to each of the Drake et al and Frova patents, the prior art patents which were cited and/or considered by the Patent Office Examiner in connection with the application for '736, the presumption of validity remains unrebutted and runs to and has added force with respect to each of the three criteria of novelty, usefulness and unobviousness. J. A. Mohr & Son v. Alliance Securities Co., CCA 9, 14 F.2d 799, 800.

(b) With relation to the Newcomb, Kok and Whitman patents, there is no evidence that the Patent Office Examiner considered the same.

However, each of the three patents, Newcomb, Kok and Whitman, is less pertinent with respect to the subject matter of Claim 11 than either the Frova patent or the Drake et al patent. Also, neither Newcomb, Kok nor Whitman is any more compatible with either Frova or Drake et al, from the standpoint of teaching or suggesting how either of the latter might be modified through the exercise of the ordinary skill of the art to meet Claim 11, than other prior art cited by the Patent Office against the application for '736.

In these respects reference is had to Finding 14 concerning Newcomb, to which Finding there is here added that Newcomb merely discloses in a semischematic manner the coring and pitting of an olive, no receptacle or other form of holder for the olive being disclosed and no pitting equipment being disclosed other than a coring knife per se and a plunger per se.

In these same respects reference is had to Finding 15 concerning Kok. Also, while the Kok patent was not cited against the application for '736, two prior patents which had been granted to George W. Ashlock, Jr., 2,250,518 and 2,271,675, were cited against the application for '736. Each of Ashlock 2,250,518 and Ashlock 2,271,675 refers to and incorporates by reference the disclosure in an earlier patent, 2,157,518, which was granted to George W. Ashlock, Jr. The plaintiff's witness, Hesse, testified that the cherry pitting head disclosed in the Kok patent was essentially identical with the cherry pitting head disclosed in Ashlock 2,157,518.

In these same respects reference is had to Finding 16 concerning Whitman. Also, in comparing Whitman with Frova with respect to the subject matter of Claim 11, I find that: neither Whitman nor Frova has a conveyor which is "movable continuously over a path"; neither Whitman nor Frova has a pitting head which is "mounted for a reciprocating

movement along said conveyor at a forward rate of advance substantially that of said conveyor"; both Whitman and Frova have a "plunger reciprocatively supported"; Whitman has a knife which is "reciprocatively supported", but this knife is not a "coring" knife, while Frova has "a coring knife reciprocatively supported"; both Whitman and Frova have "means for first moving said plunger and said knife substantially simultaneously toward each other"; and Whitman does not have, while Frova does have, means for then moving said plunger and said knife at substantially the same rate in the same direction.

As to the comparison of Whitman with Drake et al with respect to the subject matter of Claim 11, reference is had to Finding 16 concerning Whitman and Finding 18 concerning Drake et al.

(c) In Finding 19 I have pointed out what I have found to be the advance contributed to the art of pitting machines by the disclosure of '736 and that this advance in the art is properly defined by Claim 11. I further find that Claim 11 is directed to a true combination of elements in which the elements by way of their joint action on their common object, an olive and its pit, perform additional functions and accomplish additional effects, as distinguished from a mere aggregation of elements in which each element remains unchanged in function and effect. During the course of the cyclic dual reciprocative motion of the plunger and coring knife elements which I have found to be the advance in the art in Finding 19 made by the disclosure of '736 and Claim 11, the co-action of the knives as they move in the same direction transversely of the conveyor and at the same speed produces an additional function and effect over and above the functions and effects producible by these elements in their separated state, namely, not only is the olive pit moved outwardly of the olive while the coring knife serves as a reinforcement tube for the cored end of the olive, thereby protecting this cored and weakened end of the olive against tear or breakage, but the pit is guided outwardly of the olive while it is engaged endwise by the knives and while it is subjected to at least a degree of endwise compression by the knives, thereby preventing any skewing movement of the pit at it travels out of the olive. Such skewing movement, if permitted to occur, can result in the production of a pitted olive which is torn or broken at the end through which the pit has been removed.

The dual reciprocative motion of the plunger and coring knife elements relative to the moving conveyor in and of itself amounts to an additional function which is achievable by the co-action of the elements of Claim 11, but which is not achievable by the elements in their individual capacity, i. e., when they are considered as being outside of the context of relationship called for by Claim 11. This further additional function produces an additional effect or advantage in the sense that a pitting machine having plunger and coring knife elements movable with the dual reciprocative motion described in Finding 19 is capable of a speed of operation, and hence productive capacity as to its output of pitted olives, which is substantially greater than the speed of operation of, for example, the type of olive pitting machine shown in the Drake et al patent. W. H. Kagley, one of the co-inventors named in the Drake et al patent, testified during the course of the trial. He testified that from 1940 to the present time olive pitting machines of the type shown in the Drake et al patent had been operated by the Lindsay Ripe Olive Company at a variable rate of speed to produce from 850 to 1200 pitted olives a minute. He stated that there were 30 pairs of punches, or plungers, and coring tubes, or knives, carried by the continuously rotating drum units which serve as carriers for these punch and tube elements. Each punch and coring tube pair operates at a coring and pitting stroke speed of from about 28 strokes a minute to obtain an output of 850 olives per minute up to 40 strokes a minute to obtain the maximum output for the machine of 1200 pitted olives per minute.

By way of contrast to this range of about 28–40 pitting strokes per minute per knife pair with production machines of the type shown in the Drake et al patent, plaintiff's Type B, Type C, and Type D machines, and defendant's machines alleged to infringe '736, all of which machines operate in accordance with the dual reciprocative motion described in Finding 19, have been commercially operated at speed ranges on the order of 140–160 strokes per knife pair per minute. The rate of pitting action of these machines of the plaintiff and the defendant is so rapid that when a knife pair (plunger-coring knife) is moved transversely of the conveyor with an olive pit between the knives of the pair, the rate of acceleration of the knife pair and interposed pit downwardly is such as to cause the lower, or coring, knife, which in each of the Type B, Type C, Type D, and in the defendant's machines is slidably mounted relative to its carrier member, to exert an upward pressure due to inertial effect against the pit. This is a further additional function and additional effect which is inherently obtainable with olive pitting machines which are operable in accordance with the dual reciprocative motion described in Finding 19 when operated at commercial production speeds.

While a pitting head system wherein the upper and lower aligned knives have the dual reciprocative motion described in Finding 19 gives such a pitting head system a high output capacity potential for the pitting of olives, it is the combination with such a pitting head system of the continuously moving conveyor which brings this high output capacity potential to fruition. The co-active cycle of movement between the upper and lower knives of such a pitting head system and the continuously movable conveyor is one that is characterized by relative movement between the upper and lower knives and the conveyor in the direction of travel of the conveyor. Such relative movement, which consists of an accelerating advance of the upper and lower knives until their forward speed matches that of the conveyor and a decelerating retreat of the upper and lower knives in a direction counter to the direction of movement of the conveyor, the latter being for the purpose of allowing the next in line of unpitted olives to arrive at the coring and pitting station during the time when the next accelerating advance of the upper and lower knives will have enabled the knives to catch up with and travel at the same speed as said next in line of unpitted olives, amounts to a further additional function which arises out of the combination of the particular pitting head system called for by Claim 11 with the continuously movable conveyor called for by Claim 11, said function not being derivable from any one of the elements, taken individually, of Claim 11. This additional function enables the obtaining of the practical and desirable additional effect of high productive capacity. In Drake et al, there is no relative movement between the olives and the sets of knives with reference to the direction of travel of the olives. In Frova, the olives are stationary while the knife pairs are being moved into engagement with them.

(d) As above indicated, W. H. Kagley, one of the co-inventors of the olive pitting machine disclosed and claimed in the Drake et al patent and who for many years to date has been the chief engineer of the Lindsay Ripe Olive Company of Lindsay, California, testified during the course of the trial. Mr. Kagley has served as an employee of Lindsay Ripe Olive Company for about 29 and ½ years and has been Lindsay's chief engineer for about 24 years. Since prior to 1940 Mr. Kagley's activities as an employee of Lindsay Ripe Olive Company have involved the development and improvement of Lindsay's olive pitting machinery. Lindsay Ripe Olive Company was the first company in the United States to commercially produce pitted olives and it is reputed to be at the present time the largest commercial producer and packer of pitted olives anywhere in the world.

Mr. Kagley was called as a witness by the defendant during the course of the

trial. The plaintiff objected to this for lack of notice under 35 U.S.C. § 282. The Court permitted Mr. Kagley to testify over plaintiff's objection after assuring the plaintiff that it would protect the plaintiff against the element of surprise by way of any reasonable measure, such as a recessing of the trial. The plaintiff waived any such protective measure. It then devoloped that Mr. Kagley was examined closely and at length by counsel for both sides and by the Court.

Mr. Kagley admitted that the Drake et al patent did not disclose that the coring tube, or knife, of the pitting machine shown in the Drake et al patent fully cored the olive up to the pit and that consequently the patent did not disclose the separation of the olive from the pit while the latter was engaged or held between the plunger and the coring knife. Mr. Kagley thereby admitted that the Drake et al patent did not disclose the function or effect, obtainable with the invention of Claim 11 of '736, as above set forth, of the engaging of the two ends of the pit with the plunger and the coring knife during pit removal.

Mr. Kagley also admitted that the Drake et al patent did not state that it was the intention of the inventors that the rod, or coring tube, designated by the reference numeral 250 in Figs. 12–14 be adjustable. Adjustability of this rod, or tube, would be necessary to enable the coring element to core an olive all the way up to the pit. The witness also testified that the threaded connection between the coring tube and the collar in Figs. 12–14 appeared to signify merely a manner of attachment and not to indicate that the coring tube was adjustable. The witness was unable to answer the question as to whether the coring tube mounting system of Figs. 28–32 of Drake et al would be recognized by one skilled in machinery, or an engineer, as being intended for adjustment of the coring tube indicated by the reference numeral 428. With reference to this coring tube mounting system of Figs. 28–32, the Drake et al patent makes no mention of adjustability of the coring tube but merely refers to the mounting system as being one whereby the coring tube is made subject to repair and replacement.

On the basis of Mr. Kagley's testimony, the Court finds that the Drake et al patent not only does not disclose the full coring of an olive to bring the coring tube into engagement with the pit but also that the Drake et al patent does not contain the suggestion to one of ordinary skill in the pitting machinery art that this be done.

Mr. Kagley testified that the machine shown in the Drake et al patent was operated in practice at the Lindsay plant from the outset of its use in about 1940 by setting the coring tube so that it would engage the pits during the coring and pitting operation. Such testimony standing by itself, as it does, is insufficient to establish prior public use or knowledge of an olive pitter in which the pit was removed by being endwise engaged by the coring knife and pitting knife. Cold Metal Products Co. v. E. W. Bliss Co., CA 6, 285 F.2d 244.

Even if Mr. Kagley's testimony in respect to removal of a pit while it was endwise engaged by the coring knife and pitting knife had been substantiated, the Court would not have considered that this had any controlling effect on the issue of validity of Claim 11.

Assuming, arguendo, that Mr. Kagley's testimony as to endwise engagement of the pit by the coring knife and the pitting knife was had during pit removal met the standard of proof commonly required, the prior use or knowledge thereby established was not, as is required, public in nature prior to the making of the invention of '736. The invention of '736 was made between September 30, 1943 and November 13, 1943.

Mr. Kagley was not sure that Lindsay exhibited its machines to the public prior to February 15, 1944, the date of issuance of the Drake et al patent. The witness stated that he did believe that the public was admitted to the plant to view the machines when Lindsay was assured that the Drake et al patent would be granted.

Assurance that a patent will be granted is only had when the Patent Office issues a Notice of Allowance. The Notice of Allowance of the Drake et al patent application was dated December 28, 1943, a date after the invention of '736 was made.

Just prior to the date of issuance of the Drake et al patent, Lindsay Ripe Olive Company had one machine of the type shown in the Drake et al patent in operation. This machine was cleaned up, repaired, and maintained during evenings or on Saturdays. If the coring tube needed sharpening, that was usually done on Saturdays when the few employees in the plant would not be aware of the work in progress. Mr. Kagley and his helper were the only ones to have a hand in the dismantling of the machine to repair it. Mr. Kagley did testify that at least the plant superintendent of Lindsay Ripe Olive Company was aware of the inner details of the pitter.

■■■ On the basis of Mr. Kagley's testimony, taken with the fact that the Drake et al patent makes no disclosure or suggestion of the coring tube contacting the pit, the Court is caused to find that coring to the pit, if such did take place at the Lindsay plant prior to 1944, was maintained as a trade secret until at least after the time of the invention of '736 was made. If such coring to the pit took place, the use and knowledge thereof was secret rather than public, and it has no effect on the question of validity of Claim 11 of '736. Gillman et al. v. Stern et al., CA 2, 114 F.2d 28.

A significant part of Mr. Kagley's testimony consists of his statement that it was necessary to core an olive to the pit and that proper pitting and coring could not be obtained if the coring knife did not contact the pit, no matter how small the distance between the knife and pit was. The plaintiff's expert fact witness, E. J. Hesse, a vice president of the plaintiff and for many years, and still, plaintiff's chief engineer, testified along the same lines. Defendant's expert fact witness, M. L. Loveland, its vice president and chief engineer and the one primarily responsible for the design and development of defendant's olive pitting machines, testified that it was not necessary to core the olive to the pit and that proper pitting and coring could be obtained if the coring knife did not contact the pit as long as the coring knife was brought rather close to the pit before the removal operation on the pit commenced. Mr. Loveland admitted, however, that, except in the case of abnormally short pits, pitting and coring was achieved with defendant's pitting machines by way of coring the olive deep enough to engage the coring knife with the pit and thereafter moving both the plunger, pit and coring knife out of the olive while the pit was engaged by both the plunger and the coring knife.

(e) Where, as here, the elements claimed in combination amount to a true combination rather than a mere aggregation of elements, this is in itself some evidence of the presence of patentable invention because the patentee has added something to the total stock of knowledge by way of the further functions and effects which are obtainable by the elements in combination but not obtainable from them in their individual or separated status.

(f) The Court finds as a fact that novelty in the sense of newness is reflected in that portion of Claim 11 which preceeds the "means" clause thereof. It was new in the art at the time the invention of Claim 11 of '736 was made to provide a pitting head mounted for a reciprocating movement along a conveyor wherein the pitting head was provided with a first portion overlying the conveyor and having a reciprocatively supported plunger and a second portion underlying the conveyor and having a reciprocatively supported coring knife. The means clause of Claim 11 is a necessary part of the claim from the standpoint of rendering the claim complete, but this "means" clause merely serves the office of bringing into working relation the pitting head and conveyor earlier described in the claim to obtain the dual reciprocative motion describing in Finding 19.

(g) The defendant's defense of invalidity of Claim 11 is of the mosaic type, being based as it is on the five above-mentioned prior art patents and the testimony of Mr. Kagley. The Court finds that it would require the exercise of hindsight, based upon knowledge beforehand of the disclosure of '736 and of the entity constituted by the combination as a whole of Claim 11, for one having ordinary skill in the art of fruit pitting and fruit pitting machinery to perceive how to arrive at the combination of Claim 11 from the various and diverse teachings and disclosures of the five prior art patents. From this it follows, and the Court so finds, that the subject matter of Claim 11, that is, the elements set forth in Claim 11, taken in combination and as a whole, was not obvious, at the time the invention of Claim 11 was made, to a person having ordinary skill in the art to which said subject matter pertains.

The Court's findings as to novelty, utility and unobviousness of the subject matter of Claim 11 would be the same even in the absence of the presumption of validity and would likewise be the same even if no one of the five prior art patents had been considered and/or cited against the application for '736 by the Patent Office.

(h) The defendant pleaded a special defense of invalidity with respect to Claim 11. It urged that Claim 11 was invalid because it was based upon a disclosure which was made in the application more than a year after the date of first public use of a pitting machine embodying the invention of Claim 11. The application for '736 was filed on March 31, 1944; a pitting machine embodying the invention of Claim 11 was introduced into public use by being put out on lease by George W. Ashlock, Jr. in May of 1944; on September 17, 1945, Claim 11 was asserted in the application by way of amendment; and by way of the same amendment there was added to the written description of the application the italicized part of the following passage:

"The pitting plungers and the coring knives are moved by the pitting head over the same path. However, when the knives are lowered by plungers, 71, chains 161 raise the coring knives so the two approach each other *until they practically meet; in any case they are brought together until the space between them is far less than the length of an olive pit and either one or both of the springs resiliently mounting the plunger and the coring knife is or are compressed.*"

A setting of the plunger and coring knife so that the distance between them is less than the length of an olive pit in the absence of an olive and so that one of the springs resiliently mounting the plunger and the coring knife is compressed in the presence of an olive is inherently required by the "means" clause of Claim 11 with reference to the Type B machine shown in '736. There was, however, co-pendency between original and subsequently cancelled Claim 2 of '736 and Claim 11, and the former claim contained a "means" clause which likewise inherently required such a setting between the plunger and coring knife elements and such a spring compression during the pitting operation, i. e.:

"and means for moving the knife and and the plunger in a timed relationship to withdraw the knife from the fruit while the plunger retains the pit against the knife and the pit is forced out of the fruit while retained between the knife and the plunger."

In the light of the following factors, inter alia, the Court finds that the application, as filed, for '736 contained a sufficient disclosure of the setting of the plungers, or punch knives, and coring knives and the existence and function of the knife springs as not to constitute the amendment of September 17, 1945, a disclosure of new matter: the presence of the aforesaid "means" clause in original Claim 2; the drawings of the application, as filed, showed the springs for both the plungers and the coring knives; the written description of the application, as filed, stated that the upper punch knives

were carried for movement against the bias of their springs 96 and stated that the springs 143 provided resilient mountings for the lower coring knives 130; and it is clear to the Court, from which the Court takes it that it is quite clear to one of ordinary skill in the art, that Figs. 5 and 6 show that the upper and lower knives are set to approach each other much closer than the length of an olive pit in the absence of an olive and that the upper and lower knives travel together in the same direction in the presence of an olive with the pit engaged between them to effect pit removal. In re Wolfensperger, CCPA, 302 F.2d 950.

(i) The Court finds that Claim 11 covers each of the plaintiff's machines known as the Type B, the Type C, and the Type D machines. In the words of the application, as filed, for '736, the Type B machine therein shown was "the present preferred form of machine embodying this invention."

In converting from the Type B to the Type C machine the principal change made was the replacement of the chain and pully elements of Type B, whereby downward and upward movement of the upper pitting head portion caused, respectively, upward and downward movement of the lower pitting head portion, with a lift cam, rod and link elements, whereby the same relative motions of the upper and lower pitting head portions could be obtained during pitting operation, but without tying the movement of one head portion to the other head portion. The Court finds that the change made, as just described, was both a simple and an obvious one, being taught to one of ordinary skill in the art as a substitution of mechanical equivalents by the prior art patent to Whitman. In going from Type B to Type C the latter reflected over the former no change in identity of function and no change in substantial identity of performing that function. Both of these machines were embodiments of the advance made in the art by way of the invention of '736 and Claim 11 thereof, said advance having

been definitively set forth by the Court in Finding 19.

In converting from the Type C to the Type D machines, only one change was made which was of any relevance to the subject matter of Claim 11. Instead of a wheel and track mounting system, whereby the pitting head was enabled to move back and forth lengthwise of the conveyor, the Type D machine was provided with forward and rearward pairs of parallel swing arms to carry the pitting head for to and fro movement relative to the conveyor, in the manner of the mode of suspension of the platform and opposed seats of the lawn swings of some years ago. Here too the change amounted merely to the substitution of one old carriage mounting for another.

In going from Type C to Type D the latter reflected over the former no change in identity of function and no change in substantial identity of performing that function. Both of these machines were embodiments of the advance made in the art by way of the invention of '736 and Claim 11 thereof, said advance having been definitively set forth by the Court in Finding 19.

From the 1949–1950 olive pitting season, the first year for which total industry production figures for the pitting of olives were available, through the 1960–1961 olive pitting, during which twelve olive pitting seasons the Lindsay and Ashlock olive pitters were the only ones being used by the industry, the total industry production of pitted olives amounted to 112,355,015 pounds. Of this amount, 23,718,014 pounds were accounted for by the Lindsay machines, and 88,637,001 pounds were accounted for by the Ashlock pitting machines, i. e., predominantly of the Type D model.

The Court finds that the Type D machine amounted to a substantial commercial success and that Claim 11 is to be accorded the benefit of this commercial success inasmuch as Claim 11 has been found by the Court to cover the Type B, Type C and Type D machines of the plaintiff.

[7] 23. The contribution to the pitting machinery art constituted by the subject matter of Claim 11 is a substantial one. The plaintiff is therefore entitled to a reasonably broad application of the doctrine of mechanical equivalents, such as will be in keeping with the magnitude of the step forward in the art constituted by the teachings of '736 as defined by Claim 11 thereof.

24. With the preceding finding in mind, the Court turns to the issue of infringement. At the outset it should be noted, and the Court so finds, that Claim 11 is readable in terms in its entirety upon the olive pitting machines of the defendant. It is furthermore clear, and the Court so finds, that the defendant did not change the principle of its machines in comparison to the principle of the plaintiff's machines defined by Claim 11, but that on the contrary the defendant's machines were embodiments of the advance made in the art by Claim 11, said advance in the art having been defined by the Court in Finding 19 and being characterized by the dual reciprocative motion of the upper and lower pitting head portions described in said Finding.

The defendant's machines are provided with separate cams for the separate control of the upper and lower pitting head portions, as was the case with the Type C and Type D machines of plaintiff and with the pitting machine of the prior art Whitman patent. However, while the cam for the lower pitting head portion of defendant's machines serves the operative function of moving the coring knives upwardly to engage the olive pits, it does not serve any operative function while the upper and lower knives, with pit engaged between them, are conjointly moved downwardly during the actual pitting operation.

During this actual pitting operation defendant's machines are in effect single cam machines, and, in this respect, they resemble somewhat more closely in their inter-related structure and manner of operation plaintiff's Type B machine than do plaintiff's Type C and Type D machines. During this "single cam" mode of operation of defendant's machines during the actual pitting operation, the defendant utilizes the force of inertia to press the coring knife against the pit, whereas during the actual pitting operation plaintiff's Type B machine utilized the additive factors of coring knife spring pressure and the force of inertia to press the coring knife against the pit.

The substitution of such as the force of gravity or the force of inertia for the force of a spring, and here there was only a partial substitution in the sense that plaintiff's spring plus inertia force was replaced by the force of inertia alone, when, as here, the one substituted for the other accomplishes the same result in substantially the same way amounts to what has long been regarded as the substitution of one typical equivalent for another.

Plaintiff's Type C and Type D machines also utilize the additive factors of coring knife spring pressure and the force of inertia to press the coring knife against the pit during the actual pitting operation, i. e., pit removal operation.

The defendant's pitting machines each amount to a combination and arrangement of mechanism which produces the same effect and in substantially the same way as the combination and arrangement of the mechanism of Claim 11, and defendant's pitting machines are infringements of Claim 11.

The mode of operation of defendant's pitting machines is substantially the same as the mode of operation of plaintiff's machines, both the Type B, Type C and Type D types, covered by Claim 11, said mode of operation being that of the dual reciprocative motion described by the Court in Finding 19 as characterizing the advance made in the art by '736 and Claim 11 thereof.

25. Claim 5 of '736 has been withdrawn. Claim 5 has no effect on Claim 11.

26. Defendant has pleaded the defense of misuse based upon the admitted facts that the '736 patent expires on September 3, 1963; that plaintiff leases

its machines covered by said patent only for a term of three years; that many of its leases entered into before expiration of the '736 patent do not expire until after September 3, 1963.

Upon these facts and others stipulated to, this Court in its opinion dated January 22, 1963, and reported at 136 USPQ 339, denied a motion for summary judgment brought by defendant seeking dismissal of the complaint upon the ground of misuse because such facts did not, in the opinion of this Court, show that the '736 patent itself significantly contributes to the 3 year leasing practice of plaintiff. In other words, this Court viewed plaintiff's three year leasing practice to be lawful per se and to be independent of and apart from the '736 patent and from relief for infringement thereof sought by plaintiff. Such motion was denied without prejudice to defendant's right at the trial to prove that there is a significant relationship between the '736 patent and plaintiff's leasing practice.

At the trial of this case such additional proof of defendant as has been received in evidence does not, in the opinion of this Court, show a significant relationship between the '736 patent and plaintiff's leasing practice sufficient to sustain defendant's position that plaintiff's leasing practice is being used to extend the monopoly of the '736 patent.

27. The defendant has failed to establish an unlawful monopoly or violation of any anti-trust laws on the part of the plaintiff.

28. The Court finds that it is neither possible nor practical to separate the parts from the whole of the overall Ashlock olive pitting machine for the purpose of assessing damages on an apportionment basis. Aside from the elements defined in Claim 11 as constituting the subject matter thereof, an overall Ashlock olive pitting machine is further constituted by a feed hopper into which the olives to be pitted are delivered in bulk, a pick-up conveyor which serves the purpose of transferring the olives from the feed hopper to the conveyor recited in Claim 11, and vibrator means associated with the conveyor mentioned in Claim 11 to serve the purpose of causing the olives within the receptacles of the conveyor of Claim 11 to work themselves into the desired pitting position wherein their long axes are disposed essentially vertically. The Court finds that in the absence of any of these further parts of the overall Ashlock olive pitting machine any resulting version of a pitting machine would lack the usefulness of the overall machine in the hands of the Ashlock lessees and thus not be desirable to the lessees from the practical aspect of commercial production use. Mr. Margaroli's testimony was to the effect that none of the plaintiff's lessees had ever to his knowledge requested the lease of less than an entire olive pitting machine of the plaintiff or of the plaintiff's predecessors.

29. The Court finds that the defendant had one infringing machine under lease for the 1961–1962 olive pitting season and that the defendant had six infringing machines under lease during the 1962–1963 olive pitting season, and that the total rental income obtained by the defendant from the lessees of these seven machines during the two olive pitting seasons amounted to $37,988.92.

30. The Court finds that $37,988.92 is a reasonable royalty for the defendant to pay to the plaintiff for the use of said infringing machines during the 1961–1962 and 1962–1963 olive pitting seasons.

31. Patent No. 2,406,736 expired on September 3, 1963.

32. The 1963–1964 olive pitting season did not commence until September 1, 1963, which date, for all practical purposes, is after the expiration date of plaintiff's patent 2,406,736.

33. The one infringing machine of defendant which was under lease for the 1961–1962 olive pitting season is no longer in existence. The six aforesaid infringing machines of defendant which were under lease for the 1962–1963 olive pitting season are still under lease for the 1963–1964 and 1964–1965 olive pitting seasons.

34. Prior to the date of expiration of '736 the defendant was engaged in the process of constructing five additional olive pitting machines, each of which has been placed on a three year lease commencing with the 1963–1964 olive pitting season (September 1, 1963 through May 2, 1964) and, hence, for all practical purposes, these five additional machines will be placed out in use under lease after the expiration of patent '736.

35. The sum of $37,988.92 which is to be awarded plaintiff as the reasonable royalty measure of damages for the one infringing olive pitting machine of the defendant used during the 1961–1962 olive pitting season and for the six infringing olive pitting machines of the defendant used during the 1962–1963 olive pitting season is adequate compensation for the infringing manufacture, lease and use thereof, and plaintiff is not entitled to further damages for the use of the six still existing machines after the expiration date of the patent, September 3, 1963, and, hence, the plaintiff is not entitled to further damages for the lease and use of these machines for the 1963–1964 olive pitting season or any olive pitting season thereafter.

36. The plaintiff is entitled to nominal compensatory damages for the five infringing machines which were in the process of manufacture by the defendant before the expiration date of '736 for use under lease at least for the 1963–1964 olive pitting season and thereafter, said nominal compensatory damages to be in the sum of $500.00 for each of said five machines.

37. Plaintiff is entitled to interest against the defendant on the sum of $37,988.92, said interest to commence as of May 2, 1963 and to continue until said principal sum is paid, said interest to be at the rate of 7% per annum.

38. The record fails to fix a date when royalties ought to be due, and in the absence thereof the terminating date of the 1962–1963 olive pitting season, May 2, 1963, has been fixed by the Court as an established date when such royalties ought to have been paid in full.

39. The defendant has not been and is not a willful infringer of patent '736.

40. This cause was consolidated for trial with and was tried along with Cause No. 41,029 in this Court, and judgment was entered in favor of the defendant in Cause No. 41,029.

## CONCLUSIONS OF LAW

1. Claim 11 of Ashlock patent No. 2,-406,736 is valid and has been infringed by the olive pitting machines of the defendant.

2. The date of the making of the invention of patent No. 2,406,736 and of the making of the invention as defined by Claim 11 of said patent is a date between September 30, 1943 and November 13, 1943.

3. Claim 11 is entitled to the benefit of the filing date, March 31, 1944, of the application for '736.

4. There is and there has been no misuse of plaintiff's patent '736.

5. There is and there has been no unlawful monopoly or violation of any anti-trust laws on the part of the plaintiff.

6. The defendant has failed to establish the proof required of it under its burden of proof to render invalid Claim 11 of '736.

7. The defendant has failed to sustain the burden of proof required of it to establish a misuse of plaintiff's patent '736.

8. The defendant has failed to sustain the burden of proof required of it to establish an unlawful monopoly or violation of any anti-trust laws on the part of the plaintiff.

9. The plaintiff is entitled to damages in the sum of $40,488.72 with interest on $37,988.92 thereof, said interest to commence as of May 2, 1963 and to continue until paid at the rate 7% per annum.

10. Each side is to bear its own costs.

11. Judgment shall be entered accordingly in favor of plaintiff.